# UNION JOINT STOCK LAND BANK OF DETROIT
## *v.* BYERLY.

No. 579. Argued March 6, 1940.—Decided April 22, 1940.

2

*Mr. Ralph G. Martin,* with whom *Mr. A. G. Masters* was on the brief, for petitioner.

*Messrs. Elmer McClain* and *William Lemke* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

September 1, 1932, the petitioner instituted a mortgage foreclosure suit against respondent in the Common Pleas Court of Madison County, Ohio. The cause was prosecuted to judgment and advertisement was made of a sheriff's sale of the property to take place November 24, 1934.

November 19, 1934, the respondent filed his petition in the United States District Court under § 75 of the Bankruptcy Act,[1] and the court issued an order restraining proceedings in the foreclosure suit until the further order of the court.

November 23, 1934, the District Court, on application of the petitioner, without reference of the matter to a conciliation commissioner, modified the restraining order to permit the sale of the premises as advertised but enjoined any further proceedings, particularly confirmation of the sale or execution of sheriff's deed.

November 24, 1934, the sheriff, as permitted by the modification of the restraining order, held the sale as advertised. The petitioner bid the property in and the sheriff made return of the sale.

---

[1] Act of March 3, 1933, c. 204, 47 Stat. 1467, 1470.

December 14, 1934, the District Court approved the respondent's petition under §. 75 of the Bankruptcy Act and ordered a reference to a conciliation commissioner. The latter reported that no agreement could be reached between the respondent and his creditors.

February 11, 1935, the respondent abandoned proceedings under subsections (a) to (r) of § 75 and filed an amended petition to be adjudged a bankrupt pursuant to § 75 (s).[2]

May 27, 1935, this court held certain features of § 75 (s) unconstitutional. *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555.

August 26, 1935, on the application of the respondent, the District Court ordered that, because of the unconstitutionality of § 75 (s), the respondent's petition and amended petition be dismissed and that the case be terminated.

August 28, 1935, § 75 was amended [3] to meet the decision in *Louisville Bank* v. *Radford, supra.* The Act, as so amended, provided in paragraph 5 of § 75 (s):

"This Act shall be held to apply to all existing cases now pending in any Federal court, under this Act, as well as to future cases; and all cases that have been dismissed by any conciliation commissioner, referee, or court because of the Supreme Court decision holding the former subsection (s) unconstitutional, shall be promptly reinstated, without any additional filing fees or charges."

September 10, 1935, the sheriff's sale was confirmed by the Common Pleas Court. Subsequently this action was, on appeal by respondent, affirmed by the Court of Appeals of Madison County.

September 11, 1935, the sheriff's deed was delivered to the petitioner and was recorded.

---

[2] Subsection (s) was added to § 75 by the Act of June 28, 1934, c. 869, 48 Stat. 1289.

[3] Act of August 28, 1935, c. 792, 49 Stat. 942.

4

September 24, 1935, the respondent moved the District Court for reinstatement of his bankruptcy case. The motion was granted but apparently no amended petition has been filed nor any adjudication entered under § 75 (s).

May 8, 1936, the petitioner moved the District Court for an order of disclaimer of the real estate in question.

October 22, 1936, an order of disclaimer was entered. October 26 a petition for rehearing was filed by the respondent and was entertained by the court.

April 17, 1937, the respondent moved the District Court that the proceedings in bankruptcy be referred to a conciliation commissioner pursuant to § 75 (s).

May 6, 1937, the District Court overruled the respondent's petition for a rehearing of the order of disclaimer.

May 8, 1937, the District Court overruled the motion of the respondent to refer the cause to a conciliation commissioner.

May 27, 1937, the respondent petitioned the District Court for an appeal to the Circuit Court of Appeals from the order denying his petition for rehearing of the order of disclaimer and from the order denying his motion to refer the cause to a conciliation commissioner and, on the same date, the District Court allowed an appeal.

June 3, 1937, the respondent petitioned the Circuit Court of Appeals for leave to appeal from the orders of the District Court and, June 7, 1937, leave was granted.

The Circuit Court of Appeals reversed the orders of the District Court, holding that, at the time of filing his new petition under § 75, as amended, the respondent had a property right—a right of redemption—in the mortgaged premises, which had not been cut off by the sale and its confirmation in the state court, and that the cause should be referred to a conciliation commissioner and prosecuted before him.[4] On account of the

---

[4] *Byerly* v. *Union Joint Stock Land Bank,* 106 F 2d 576.

importance of the question involved in the administration of the Bankruptcy Act, we granted certiorari.

The petitioner asserts that the court below erred, as the action of the District Court modifying the restraining order and permitting a sale of the mortgaged premises was authorized by the Bankruptcy Act and, if not, it is binding upon the respondent since he failed to except to or appeal from it.

The petitioner further asserts that the respondent's procurement of the termination of the original bankruptcy case amounted to a waiver of any irregularity which occurred while the proceeding was pending and precluded the respondent from objecting to such irregularity. Further, petitioner contends that the sale made by the sheriff did not change the legal status of the debtor and his property since his right of redemption, under Ohio law, remained until confirmation of the sale by the state court; and, although that court was without jurisdiction while the original bankruptcy proceeding was pending, it regained such jurisdiction by the termination of the bankruptcy case, and had exclusive jurisdiction of the parties and the subject matter, when the decree of confirmation was entered. The claim is that the decree of confirmation cannot be collaterally attacked in the bankruptcy court.

The respondent, on the other hand, argues that the express provisions of § 75, in force at the time the sale was made, rendered void the District Court's permission to make the sale and the sheriff's action in making it; and that confirmation or delivery of a deed can give no validity to such void action, which the bankruptcy court should, therefore, have disregarded.

*First.* The action of the District Court in permitting the holding of the sale was not void but voidable; and the sale made pursuant thereto was not void.

Section 75, as it stood during the pendency of the original bankruptcy proceeding, provided:

6

"(e) . . . After the filing of the petition and prior to the confirmation or other disposition of the composition or extension proposal by the court, the court shall exercise such control over the property of the farmer as the court deems in the best interests of the farmer and his creditors."

"(n) The filing of a petition pleading for relief under this section shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed."

"(o) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:"

. . . . .

"(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage."

The provisions of subsection (p) as it was when the petition was filed have no application. That subsection was amended by the act of August 28, 1935, *supra*, to

provide "The prohibitions of subsection (o) shall apply to all judicial and official proceedings in any court or under the direction of any official . . ." This amendment was made after the dismissal of the bankruptcy case.

Exclusive jurisdiction of the debtor and his property vested in the District Court on the filing of the petition. Up to that time jurisdiction of the debtor and the mortgaged property was in the state court. Without action by the District Court the state court could not have proceeded further.[5] But without changing the status of the debtor's right of redemption the federal court gave permission to the state officer to hold the sale. The sale was, however, incomplete until confirmation by the court.[6] Until confirmed it amounted to an unaccepted offer to purchase. No sale was consummated while the bankruptcy proceeding was pending.

In view of the provisions of subsection (o), it was error for the District Court, in the absence of the preliminary steps required by that subsection, to permit the sheriff to hold the sale.[7] But the court had jurisdiction in the premises. Error committed by it in the exercise of that jurisdiction could have been corrected by appeal from its order.[8] The state court and its officer, the sheriff, were entitled, in view of the District Court's plenary jurisdiction over the debtor and his property, to rely upon the order granting permission to make the sale. The District Court did not lose jurisdiction by erroneously construing or applying provisions of the statute under which it administered the bankrupt estate. Its order was voidable,

---

[5] *Kalb* v. *Feuerstein,* 308 U. S. 433.

[6] *Bassett* v. *Daniels,* 10 Oh. St. 617, 619; *Reed* v. *Radigan,* 42 Oh. St. 292, 294.

[7] *Kalb* v. *Feuerstein, supra.*

[8] Compare *John Hancock Mutual Life Insurance Co.* v. *Bartels,* 308 U. S. 180.

but not void, and was not to be disregarded or attacked collaterally in the state court.[9]

*Second.* The termination of the bankruptcy proceeding restored the jurisdiction and power of the state court and its further proceedings in the foreclosure suit were not subject to attack in the bankruptcy court.

Although the state court's jurisdiction was superseded by that of the bankruptcy court, it again attached upon the dismissal of the bankruptcy case, and, thenceforward, as respects the foreclosure suit, and the state court's procedure, it was as if no bankruptcy case had ever existed. With jurisdiction of the parties and the subject matter, the state court entered a decree confirming the sale and authorizing a deed, the sheriff executed his deed, which was duly recorded, and the petitioner went into possession as purchaser of the mortgaged premises. Thereafter the respondent moved for reinstatement of the bankruptcy case and his motion was granted. In the interim, no bankruptcy cause was pending and the state court had jurisdiction to proceed as it did.

We cannot assent to the view advanced by the respondent that the amendment to § 75 of August 28, 1935, automatically reinstated the earlier proceeding which had been dismissed; or that the motion to reinstate the proceeding operated by relation to close the gap of twenty-nine days between the dismissal of the original bankruptcy case, and the state court's action in confirming the sale, and to deprive the latter of jurisdiction to act in the interim. The amendatory act merely authorized the reinstatement of proceedings which had been dismissed. The case is analogous to one wherein a state court foreclosure proceeding

---

[9] *Thompson* v. *Tolmie,* 2 Pet. 157, 163; *Voorhees* v. *Bank of United States,* 10 Pet. 449; *Florentine* v. *Barton,* 2 Wall. 210; *Cooper* v. *Reynolds,* 10 Wall. 308; *McNitt* v. *Turner,* 16 Wall. 352, 366; *Simmons* v. *Saul,* 138 U. S. 439; *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165, 173; *Insley* v. *United States,* 150 U. S. 512.

has been completed and deed delivered to the sheriff's vendee prior to the filing of a petition under § 75.[10] The provision for the reinstatement, upon the debtor's motion, of a proceeding theretofore dismissed and finally terminated, cannot affect the jurisdiction of the court conducting the foreclosure proceeding when no bankruptcy cause was pending.

*Wayne United Gas Co.* v. *Owens-Illinois Glass Co.*, 300 U. S. 131, relied upon by the respondent, is not in conflict with our decision. There a petition in bankruptcy filed under § 77B was dismissed by the bankruptcy court, not on motion of the bankrupt but at the instance of mortgage creditors and over the bankrupt's objection. In due time a petition for rehearing was filed. With notice of the filing of this petition for rehearing, and that it would be set for hearing before the bankruptcy court, the creditors took further steps in a foreclosure proceeding pending in a state court. The District Court entertained the petition for rehearing and an amended petition. The creditors who were prosecuting the foreclosure proceeding in the state court appeared and were heard in opposition. In entertaining the petition for rehearing the District Court found that good cause existed for vacation of its order of dismissal and reconsideration of the cause; that the application for rehearing had been seasonably presented, and that no rights had vested in reliance upon its earlier order of dismissal which would be disturbed by setting aside the order. The petition was dismissed, the debtor appealed to the Circuit Court of Appeals and was granted a supersedeas. From an order of the Circuit Court of Appeals affirming the dismissal of the petition by the District Court the debtor sought certiorari from this court. The state court in which the foreclosure proceeding was pending had full notice of all of these facts when it proceeded

---

[10] See *Wright* v. *Union Central Life Ins. Co.*, 304 U. S. 502, 508.

to consummate the foreclosure sale. We held that, in the circumstances, no rights were acquired under the state court proceedings since termination of the bankruptcy case did not occur until final disposition of the efforts in the District Court and on appeal to reverse the decree of dismissal.

The District Court was right in refusing to refer the reinstated cause to a conciliation commissioner. Since the foreclosure proceedings had been completed and title had passed thereunder prior to the filing of the debtor's petition for reinstatement, it would have been a vain thing to refer the cause to a conciliation commissioner for administration of property which no longer belonged to the debtor.[11] We have no occasion to pass upon the authority of the court to enter an order of disclaimer. It is sufficient that the court's action in refusing to refer the cause to a conciliation commissioner was justified. That order we think, should have been affirmed.

It is said that, even where title has passed from the mortgagor in foreclosure proceedings before the filing of the petition, the debtor should be, if he so requests, adjudicated a bankrupt so that a trustee may, if so advised, challenge the validity of the sale. Here, however, there is no suggestion of any infirmity in the petitioner's title save that the sale was made in violation of the prohibitions of the Bankruptcy Act. But that sale was made under leave of the bankruptcy court and it was within the state court's jurisdiction, when no bankruptcy proceeding was pending, to confirm the sale and order delivery of a deed. If it erred in that respect its action was subject to correction by appeal but not subject to attack in a collateral proceeding. The fact is that the debtor appealed from the confirmation of the sale to the Court of Appeals of Madison County, Ohio, which affirmed the de-

---

[11] Compare *Wright* v. *Union Central Life Ins. Co., supra.*

cree of the Common Pleas Court. An issue of fraud alleged to have been practiced upon the debtor to obtain his withdrawal of his original bankruptcy proceeding was there finally decided against him.

The judgment of the Circuit Court of Appeals must be

*Reversed.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY, dissenting.

We believe that to deny this farmer the benefits of the Act because the purchase by the mortgagee at the sheriff's sale was confirmed during the short interval between the dismissal of his petition and its reinstatement, would be largely to defeat the purposes of the Act.

After the original subsection (s) of the Frazier-Lemke Act was declared unconstitutional by the decision of this Court, May 27, 1935,[1] this farmer's petition was dismissed, August 26, 1935. A scant two days after the dismissal, August 28, Congress enacted the present Frazier-Lemke Act designed to supply the constitutional deficiency and providing that all cases dismissed because of that decision "be promptly reinstated."[2] After the filing of the petition and even before dismissal, the bankruptcy court allowed this farmer's property to be sold by the sheriff under foreclosure in the state court. And it is admitted that the order purporting to permit the sale was erroneous because entered in disregard of the requirements of subsection (o).[3] The Ohio state court confirmed the sheriff's sale, September 10, 1935, a date prior to the lapse of the thirty day

---

[1] *Louisville Joint Stock Land Bank* v. *Radford,* 295 U. S. 555.

[2] § 75 (s) (5).

[3] As we view the effect of reinstatement, it is unnecessary to determine whether the bankruptcy court's order was not merely erroneous, but void.

period within which an appeal would lie from an order of dismissal.[4]

Instead of appealing, the farmer, within the thirty day period, prayed relief from the dismissal decree by reinstatement in the District Court itself. In his application for reinstatement, he alleged that dismissal of his petition had been induced by the deliberate misrepresentations of the mortgagee-bank, that he had no notice of the consummation of the sheriff's sale until several days after it took place and that he wished to avail himself of § 75 as amended August 28. Upon the prayer "that his . . . proceeding . . . be reinstated as of the date of its . . . dismissal," the case was reinstated. We do not understand that either the power of the bankruptcy court to reinstate or the reinstatement which was in fact granted, is questioned.

Until disposition of the farmer's petition, he was entitled to the protection and benefit of the Act, and the bankruptcy court had exclusive jurisdiction of his property.[5] Dismissal of the proceeding did not constitute its final disposition where reinstatement was available. Certainly, this must hold true at least for the period of time after dismissal during which the farmer had a statutory right to appeal from the District Court's action.[6]

---

[4] 11 U. S. C. 47, 48.

[5] *Kalb* v. *Feuerstein,* 308 U. S. 433.

[6] "An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of. . . . When the final judgment was reached it determined the rights of . . . [the parties] *ab initio, . . .*" *MacKenzie* v. *Engelhard Co.,* 266 U. S. 131, 142–143. "Where a decree has not been enrolled, or where it is subject to modification upon motion, or where the court might grant a rehearing, or where an appeal might be taken, or where the costs had not been taxed, or where no execution had issued—it not being in condition to issue execution—the case could not be said to have reached that stage where it could be said it was not pending in that court." *Brannon* v. *Kentucky,* 162 Ky. 350, 357–8; 172 S. W. 703, 706. Cf.

Otherwise, even appeal might be wholly unavailing and futile. When a court of bankruptcy reinstates a case previously retired from the docket, as this farmer's case was reinstated, the court reconsiders the cause on the merits upon the original as well as any supplemental petitions unless rights have "intervened which would render it inequitable to reconsider the merits." *Wayne Gas Co.* v. *Owens Co.*, 300 U. S. 131, 137, 138. We find no intervening equities here.

In the *Wayne* case, a corporate reorganization in 77B was dismissed and subsequent to the dismissal a state court confirmed a foreclosure sale of the debtor's property which had been decreed prior to the filing of the 77B proceeding. After the Circuit Court of Appeals had denied the debtor's petition for allowance of an appeal and the time for appeal as of right had expired, the bankruptcy court reinstated the proceeding and reheard the case upon the merits. The plan of reorganization was again found wanting and the court entered a second order of dismissal. The debtor's appeal from the second dismissal was in turn dismissed by the Circuit Court of Appeals on the ground that lack of power in the District Court in bankruptcy rendered the order of reinstatement—as well as the second order of dismissal—void.[7]

When the case reached here, arguments presented by the foreclosure purchaser were in substance those upon which we are now asked to reverse the court below—that the first order of dismissal had terminated the cause (so that an appeal not taken within thirty days of its entry was not timely); and that the state court's confirmation

*State* v. *Tugwell*, 19 Wash. 238; 52 P. 1056; 43 L. R. A. 717; *Bloom* v. *People*, 23 Colo. 416; 48 P. 519; *State ex rel. Andreu* v. *Canfield*, 40 Fla. 36, 44; 23 So. 591; *Brown* v. *Campbell*, 100 Cal. 635, 646; 35 P. 433; *Ex parte Howland*, 3 Okla. Crim. 142; 104 P. 927; Ann. Cas. 1912A, 840.

[7] 84 F. 2d 965.

14

of sale, after dismissal, had finally divested the bankrupt of all title to its foreclosed property leaving no property for administration by the bankruptcy court (and the controversy was therefore moot).

This Court denied these contentions, and held that the dismissal had not terminated the proceeding; that the controversy was not moot and that the District Court had properly found that no intervening rights had accrued to divest the debtor of its property foreclosed subsequent to the dismissal in the bankruptcy court; that the rehearing had been sought in good faith and with due diligence and that the Circuit Court of Appeals had erred in not passing upon the merits of a plan of reorganization which included the property sold under the state court's order. The decision here thus approved the exercise of the bankruptcy court's jurisdiction over the encumbered property of the debtor which, after dismissal, had been bought in the state court foreclosure by creditors who were parties to the 77B proceedings and who "went forward with the proceedings in the state court, looking to a sale of the debtor's property, with full knowledge that a rehearing might be granted . . ." *Id.*, 135.

Accordingly, the case was not remanded to the District Court for reconsideration of its finding that no rights cognizable in equity had intervened as a result of the state court foreclosure. Instead, the remand went to the Court of Appeals for further proceedings. And that court properly construed the mandate to require consideration of the merits of the debtor's plan which assumed ownership in the debtor of the particular property upon which foreclosure had been attempted.[8]

So here, as in the *Wayne* case, state court proceedings subsequent to dismissal, but while further proceedings could be had in bankruptcy, did not divest the debtor of

---

[8] *Wayne Gas Co.* v. *Owens-Illinois Glass Co.*, 91 F. 2d 827.

his property; there "was no abuse of sound discretion in granting the motion [for reinstatement] and reconsidering the cause"; the district court in bankruptcy had "the power, for good reason, to revise its judgments [of dismissal and to reinstate] upon seasonable application and before rights . . . [had] vested on the faith of its action." *Id.*, 137, 138. And its general power to do so, at least during the period allowed for taking an appeal,[9] was reinforced by recognition of the specific statutory right of reinstatement in the amended 75(s), which sprang into being only two days after dismissal of this farmer's petition. Paralleling the situation presented by the *Wayne* case, not only was the mortgagee-purchaser here a party to the 75 proceeding, but the state court itself may be said to have acted with knowledge that the dismissal—of which it was notified—did not necessarily represent the last step in the federal court proceeding. Cf. *Id.*, 135.

Here, the only asserted rights which intervened against this farmer-debtor were not those of a *bona fide* purchaser. The purchaser was the mortgagee who was a party to the § 75 proceeding and who relied—at least in part—on an order of the bankruptcy court admittedly erroneous because contrary to the Frazier-Lemke Act, and rendered at the mortgagee's instigation. Therefore, the mortgagee-purchaser is not entitled to rely upon the status acquired by it in the state court after dismissal "as precluding further consideration of the petition" for composition. Cf. *Id.*, 135. To decide otherwise than that the dismissal here did not deprive the farmer-debtor of the right to proceed—before rights have vested—by reinstatement to obtain the benefits of the Act, is to permit dismissal at the instance of the farmer's creditors and without the farmer's knowledge to prove a ready means of circumvent-

---

[9] See note 6, *supra.*

ing the Act.[10] Title to a farmer's property acquired in the manner pursued by petitioner cannot limit the power of the bankruptcy court to afford the protection of and to enforce this remedial legislation.

---

[10] Cf. *In re Price,* 99 F. 2d 691, 694.